UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § § § § | Criminal No. 4:93-cr-00005-O |
| L.C. GIPSON (01). | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Compassionate Release (ECF No. 27); the Government's Response (ECF No. 30); and Defendant's Reply (ECF No. 31). Having reviewed the briefing and applicable law, the Court **DENIES** Defendant's motion.

**I.   BACKGROUND**

More than thirty years ago, L.C. Gipson ("Defendant" or "Gipson") and several co-conspirators committed a series of armed robberies at fast food restaurants in the Fort Worth area.[1] While certain co-conspirators only acted as lookouts during the robberies, Gipson entered the stores and pointed his gun at employees and customers, forcing them to the ground and demanding money.[2] After committing one robbery, police identified the getaway car transporting Gipson and attempted to pull it over.[3] A high-speed chase ensued when the driver fled and end when the vehicle crashed.[4] All of the co-conspirators were arrested, but Gipson managed to escape on foot.[5] Despite narrowly escaping arrest, Gipson robbed another store two days later.[6] This time, Gipson acted as

---

[1] Presentence Investigation Report ¶¶ 1–8, ECF No. 5.
[2] *Id.* ¶ 5.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* ¶ 6.

1

a lookout for an accomplice who pointed a gun at a clerk.[7] Gipson was eventually arrested in his home and was found with crack cocaine.[8] Gipson confessed to robbing two stores using a pistol.[9]

Despite his confession, Gipson went to trial on the seven federal charges filed against him.[10] Those charges were four counts of obstruction of commerce by robbery in violation of 18 U.S.C. §§ 1951 and 1952 and three counts of using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).[11] On June 22, 1993, Gipson was convicted by a jury of all seven counts.[12] The district court sentenced Gipson to 210 months for each of the robbery convictions to run concurrently.[13] The court also imposed a sentence of 60 months for the first 924(c) conviction, and 240 months each for the second and third 924(c) convictions.[14] In total, the court sentenced Gipson to 750 months.[15] The Fifth Circuit affirmed Gipson's convictions and sentence on direct appeal. *United States v. Gipson*, 46 F.3d 472, 476 (5th Cir. 1995).

At the time of sentencing, there were also numerous state charges—including aggravated robberies—pending against Gipson.[16] Rather than immediately beginning his federal sentence, Gipson was returned to state custody to face the pending charges.[17] Gipson was ultimately charged and convicted in state court on six aggravated robbery charges.[18] On March 10, 1994, he was sentenced to life imprisonment on the cases and immediately began his state sentence in the Texas Department of Criminal Justice.[19] After serving twenty years of his state sentence, Gipson was

---

[7] *Id.*
[8] *Id.* ¶ 7.
[9] *Id.*
[10] *Id.* ¶ 1; Criminal J. 1, ECF No. 8.
[11] Indictment 1–5, ECF No. 17.
[12] Presentence Investigation Report ¶ 1, ECF No. 5; Criminal J. 1, ECF No. 8.
[13] Criminal J. 2, ECF No. 8.
[14] *Id.*
[15] *Id.*
[16] Presentence Investigation Report ¶ 67, ECF No. 5.
[17] Mot. for Non-Binding Recommendation Regarding Current Service of Sentences 2, ECF No. 13.
[18] *Id.*
[19] *Id.*

2

paroled in 2014.[20] He was then transferred to the custody of the Bureau of Prisons (BOP) to begin serving his federal sentence.[21] Currently, the Bureau of Prisons projects Gipson's release as January 22, 2047.[22]

Given the long sentence he faces, Gipson filed his first motion for compassionate release on January 26, 2021.[23] In his motion, Gipson raised two grounds for a reduced sentence. First, he argued that the sentencing disparity following the First Step Act's change to federal firearms sentences imposed under 18 U.S.C. § 924(c) justified a reduction.[24] Second, he argued that he should be released from prison due to the serious complications that would result from contracting COVID-19 given his underlying health conditions.[25] The Court denied in part and dismissed in part Gipson's motion.[26] Specifically, the Court denied a sentence reduction based on the COVID-19 argument, but dismissed without prejudice the First Step Act argument due to Gipson's failure to exhaust his administrative remedies.[27] The Court also found that relief should not be granted based on the sentencing factors in 18 U.S.C. § 3553(a).[28]

Two years later, Gipson filed the instant motion—his second motion for compassionate release.[29] In this motion, Gipson argues that his sentence should be reduced because (1) one of his counts of conviction is no longer supported by law and (2) the non-retroactive changes to sentences under 18 U.S.C. 924(c) would cause his sentence to be lower if it were imposed today.[30] Gipson

---

[20] *Id.*
[21] *Id.*
[22] FED. BUREAU OF PRISONS, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited March 8, 2024).
[23] Emergency Mot. for Order Reducing Sentence to Time Served, ECF No. 21.
[24] *Id.* at 2–4.
[25] *Id.* at 4, 10.
[26] Feb. 14, 2023 Order 3, ECF No. 26.
[27] *Id.* at 3–4.
[28] *Id.*
[29] Mot. for Compassionate Release, ECF No. 27.
[30] *Id.* at 2–4, 7–8.

also contends that he has satisfied the exhaustion requirement by first seeking relief on these same grounds from the warden at his BOP facility.[31]

## II. JURISDICTION

The Court begins with jurisdiction. *See United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021) (directing district courts to evaluate jurisdiction prior to any consideration of the merits of a compassionate release motion). Generally, a federal court "may not modify a term of imprisonment once it has been imposed" by a final judgment. 18 U.S.C. § 3582(c). "[A] judgment of conviction that includes . . . a sentence constitutes a final judgment." *Id.* § 3582(b). However, notwithstanding that final judgment, a court may reduce a term of imprisonment when a properly filed post-judgment motion presents "extraordinary and compelling reasons" for doing so.[32] *Id.* § 3582(c)(1)(A)(i).

Gipson's second post-judgment motion for compassionate release is properly before the Court. Unlike the prior motion, Gipson has fully exhausted the administrative requirements by first seeking relief from the warden, who did not grant his request.[33] The Government admits that Gipson "has satisfied the exhaustion requirement."[34] Finding no bars to jurisdiction, the Court proceeds with its analysis of the merits of the requested compassionate release.

## III. LEGAL STANDARD

The First Step Act allows a prisoner to seek a reduced sentence under certain circumstances. Pub. L. No. 115-301, 132 Stat. 5194 (2018). The circumstance at issue here is colloquially referred to as "compassionate release." *Shkambi*, 993 F.3d at 390–92 (5th Cir. 2021) (reciting the history of sentencing reductions based on compassionate release). A prisoner can seek

---

[31] *Id.* at 4–5.
[32] Section 3582(c) also identifies additional grounds for a sentence reduction, but none are applicable here.
[33] Mot. for Compassionate Release 4, ECF No. 27.
[34] Resp. to Def.'s Mot. for Compassionate Release 3, ECF No. 30.

compassionate release when "extraordinary and compelling reasons warrant" the reduced sentence. 18 U.S.C. § 3582(c)(1)(A)(i). As the Fifth Circuit explained, "extraordinary" means "beyond or out of the common order," "remarkable," and "singular." *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) (cleaned up). And "[c]ompelling," in turn, "means to drive or urge with force, or irresistibly, to force, and to subjugate." *Id.* (cleaned up). Such reductions are permissible only upon a showing that the prisoner "face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* Upon successfully raising an extraordinary or compelling reason, a court may grant relief only if the prisoner also demonstrates that the reduction is otherwise consistent with United States Sentencing Commission (the "Commission")'s policy statement. 18 U.S.C. § 3582(c)(1)(A).

"[W]hen deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *Concepcion v. United States*, 142 S.Ct. 2389, 2404 (2022). To do so, a district court must "articulate . . . a brief statement of reasons" when denying a § 3582(c)(2) motion because "[n]othing in the First Step Act contravenes th[is] background principle[]" or obviates the requisite procedural rigor. *Id.*; *see also United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (explaining that a "district court must provide specific factual reasons" for denying a motion for compassionate release). To that end, the foregoing analysis contains the Court's specific reasons.

## IV.   ANALYSIS

Gipson seeks a reduced sentence pursuant to the First Step Act.[35] According to Gipson, the significant disparity between the lengthy sentence he received in 1993 and the much shorter sentence he would receive today presents "an extraordinary and compelling reason for

---

[35] Mot. for Compassionate Release 1, ECF No. 27.

5

compassionate release."[36] Gipson argues that this disparity exists for two reasons. First, Gipson contends that an intervening judicial decision—*United States v. Taylor*, 596 U.S. 845 (2022)—demonstrates that his conviction on Count Seven is no longer supported by law.[37] Second, Gipson attests that the First Step Act eliminated the stacking provision outlined in 18 U.S.C. § 924(c) for charges derived from a single indictment.[38] The Government opposes a sentence reduction on either ground.[39] In order to grant compassionate release to Gipson, the Government argues that the Court must rely on the policy statement in USSG § 1B1.13(b)(6) that the Commission promulgated in excess of its authority.[40] The Court agrees with the Government.

Section 3582(c)(1)(A) codifies the "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally may not modify a term of imprisonment once it has been imposed." *Dillon v. United States*, 560 U.S. 817, 819 (2010) (cleaned up). The exception makes clear that a court may do so only when "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress authorized the Commission to describe what qualifies as an "extraordinary and compelling" reason. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples"). The Commission did so when it promulgated the policy statement in USSG § 1B1.13.[41]

---

[36] Reply in Supp. of Mot. for Compassionate Release 1, ECF No. 31.
[37] Mot. for Compassionate Release 2, ECF No. 27. In *Taylor*, the United States Supreme Court held that an attempted Hobbs Act robbery is not crime of violence that warrants the sentencing enhancement established in 18 U.S.C. § 924(c)(1)(A). 596 U.S. at 852, 860.
[38] *Id.* at 2–3.
[39] Resp. to Mot. for Compassionate Release 19, ECF No. 30.
[40] *Id.* at 6.
[41] The Court recognizes that the policy statement in § 1B1.13(b)(6) and its commentary did not previously bind courts reviewing defendant-filed motions. However, the Commission's recent changes to § 1B1.13 and its commentary, effective November 1, 2023, removed the prior disconnect between 18 U.S.C. § 3582(c)(1)(A) and USSG § 1B1.13. *Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Accordingly, the updated policy statement and its commentary are once again binding both for defendant-filed and BOP-filed compassionate release motions. *See Dillon*, 560 U.S. at 827 (applying neighboring section § 3582(c)(2) and

Under the updated version of the policy statement, there are six categories of extraordinary and compelling reasons. USSG §§ 1B1.13(b)(1)–(6). The first four categories identify specific circumstances that qualify as extraordinary and compelling reasons for compassionate release: (1) medical circumstances, (2) health deterioration due to the aging process, (3) family circumstances, and (4) sexual or physical abuse from a correctional officer. *Id.* §§ 1B1.13(b)(1)–(4). The fifth category is a catchall that authorizes a sentence reduction for any "other reasons" that are "similar in gravity" to the first four. *Id.* § 1B1.13(b)(5). And the sixth reason allows for a reduction

> [i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG § 1B1.13(b)(6).

At the outset, Gipson does not cite to any of the first five USSG § 1B1.13 categories in support of compassionate release. Instead, Gipson focuses on the sentence disparity caused by the elimination of the 18 U.S.C. § 924(c) stacking requirement and the intervening *Taylor* decision.[42] Recognizing Gipson's pro se status, the Court liberally construes these arguments as invoking sixth category for an "unusually long sentence." USSG § 1B1.13(b)(6). Before deciding if Gipson's sentence qualifies, the Court considers whether this policy statement was properly promulgated by the Commission in the first place. The Court finds that it was not. As a result, Gipson cannot rely on this sixth category to justify compassionate release.

---

holding that a court may not reduce a sentence without "first determin[ing] that a reduction is consistent" with the applicable policy statement); *see also* 18 U.S.C. § 3582(c)(1)(A) (noting that a court can only grant relief if it finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission").

[42] Mot. for Compassionate Release 2–4, ECF No. 27.

When Congress authorized the Commission to describe what qualifies as an extraordinary and compelling for compassionate release, it did not grant unbounded discretion. *Cf. Batterton v. Francis*, 432 U.S. 416, 428 (1977) (emphasizing that the delegation of authority to an agency "is not unlimited"). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted). An agency cannot adopt an impermissible reading of the statute, such as a reading that exceeds the gap left by Congress. *Id.* at 53–58; *Batterton*, 432 U.S. at 428.

As "[b]road as" the Commission's "discretion may be," it nonetheless "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). Indeed, in the Sentencing Reform Act, Congress directed the Commission to ensure that all guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). Beyond that, the Commission may only "make recommendations to Congress concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20).

The policy statement applicable here states that "a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason . . . where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion [for compassionate release] is filed." USSG § 1B1.13(b)(6). Nowhere in the policy statement is there a limitation on "change in law" to

exclusively encompass only retroactive changes made by Congress. To be sure, the policy statement makes clear that non-retroactive amendments to the Guidelines Manual do not qualify as changes in law. *Id.* But this limitation does not go far enough. At no point did Congress delegate the authority to the Commission to allow non-retroactive changes in law as an extraordinary and compelling ground for compassionate release. It is Congress—and Congress alone—that must make such a determination. That is because Congress is the exclusive entity with the democratic legitimacy and constitutional authority to revise statutes in light of new social preferences and developments. Until Congress exercises that power, courts must rely on the original written law. Put differently, absent express legislative directive, "the Commission does not have the authority to amend the statute" or "to override the statute as [the court of appeals] has construed it."[43] *Neal v. United States*, 516 U.S. 284, 294 (1996).

No reasonable interpretation of the relevant statutory text in 18 U.S.C. § 3582(c)(1)(A)(i) allows for non-retroactive changes in law. The Fifth Circuit has already held as much. According to *United States v. McMaryion*, § 3582(c)(1)(A)(i)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and compelling" reasons for a sentence reduction, whether considered alone or in connection with other factors and circumstances. No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam). Indeed, § 3582(c)(1)(A)(i) was interpreted to preclude a change in law from qualifying as an extraordinary and compelling reason for a sentence reduction. *See id.* at *2 ("[A] prisoner may not

---

[43] Because the Fifth Circuit did not suggest that Section 3582(c)(1)(A)(i)'s text is ambiguous, it also is unnecessary for the Court to "decide what, if any, deference [would be] owed the Commission in order to reject its alleged contrary interpretation." *Neal*, 516 U.S. at 295; *see also DePierre v. United States*, 564 U.S. 70, 87 (2011) (explaining that the Supreme Court has not addressed what deference is owed to the Commission's interpretations of a statute); *LaBonte*, 520 U.S. at 762 n.6 ("Inasmuch as we find the statute at issue here unambiguous, we need not decide whether the [Sentencing] Commission is owed deference under *Chevron*.").

9

leverage non-retroactive changes in criminal law to support a compassionate release motion, because such changes are neither extraordinary nor compelling."). The Court declines to reconsider the Fifth Circuit's construction of the clear statutory meaning. Instead, the Court finds that the policy statement § 1B1.13(b)(6) conflicts with this statutory language. As a result, the Commission's interpretation of the statute as set forth in § 1B1.13(b)(6) is unreasonable and therefore invalid. *Cf. LaBonte*, 520 U.S. at 753 (invalidating the Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

Gipson rejects the notion that the Commission exceeded its authority. According to Gipson, Congress "expressly gave the U.S. Sentencing Commission the responsibility to describe what should be considered extraordinary and compelling reasons for sentence reduction," and the Commission did exactly that "via its new amendments to 1B1.13."[44] Be that as it may, this delegation does not contravene the reality that Congress elected not to make the changes to the statutory minimums applicable to Gipson's offenses retroactive. The First Step Act reflects Congress's deliberate choice not to make the amendment to 18 U.S.C. § 924(c)'s stacking enhancement retroactively applicable to those who were sentenced prior to enactment. *See* § 401(c), 132 Stat. 5221 (specifying that the changes would apply only "if a sentence for the offense has not been imposed as of such date of enactment"). Congress's delegation to the Commission did not alter this legislative choice. Instead, the delegated authority was limited to identification of circumstances that qualify for a sentence reduction, which does not extend to previous retroactivity determinations. The fact that the USSG § 1B1.13(b)(6) ignores this demonstrates how the Commission exceeded its delegated authority.

---

[44] Reply in Support of Mot. for Compassionate Release 3, ECF No. 31.

10

Gipson also contends that Congress "had the authority to enact legislation to reject any or all of the amendments promulgated by the U.S. Sentencing Commission" by November 1st, of 2023."[45] According to Gipson, Congress instead "elected to allow ten of the intricate guideline amendments to become law."[46] But this silence does not override Congress's previous action. Once again, the fact that Congress determined not to make retroactive the changes to statutory minimums applicable to Gipson's offenses controls. Given the "presumption against retroactive legislation" that is "deeply rooted in our jurisprudence" and "embodies a legal doctrine centuries older than our Republic," the Court elects not to assign weight to Congress's silence in response to the new policy statement. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Doing so would "usurp the legislative prerogative by using 18 U.S.C. § 3582(c)(1) to create retroactivity that Congress did not." *McMaryion*, 2023 WL 4118015, at *2. Rather, "[i]t is the legislature, not the Court, which is to define a crime, and ordain its punishment." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820)

Finding these counterarguments unavailing, the Court concludes that Gipson—or any prisoner for that matter—cannot leverage non-retroactive changes in criminal law as justification for compassionate release. That is because non-retroactive changes are neither extraordinary nor compelling. *McMaryion*, 2023 WL 4118015, at *2. Other circuits are in accord. *See, e.g.*, *United States v. Jenkins*, 50 F.4th 1185, 1198–1200 (D.C. Cir. 2022) (holding that non-retroactive changes are not extraordinary or compelling reasons for compassionate release); *United States v. McCall*, 56 F.4th 1048, 1065–66 (6th Cir. 2022) (en banc) (same). Rather, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012).

---

[45] *Id.* at 5.
[46] *Id.*

11

This practice reflects the "fundamental canon of statutory construction that words generally should be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (cleaned up). To that end, Gipson's sentence reflects the law at the time he was sentenced. And Congress has not otherwise determined that Gipson's sentence was unlawful by making retroactive the changes to the statutory minimums applicable to his offenses.

When Congress wants to make sentencing changes retroactive, it knows how to do so.[47] Congress has not done so here with either 18 U.S.C. § 924(c)'s stacking enhancement or *Taylor*'s determination that a Hobbs Act robbery is not a crime of violence. As a result, the Court is bound by the overarching principle of federal sentencing law that it "'may not modify a term of imprisonment once it has been imposed'" absent an extraordinary or compelling reason. *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Because non-retroactive changes in law and intervening judicial decisions do not provide a sufficient reason for compassionate release, the Commission exceeded its authority when it promulgated § 1B1.13(b)(6). Accordingly, the Court cannot grant compassionate release based on Gipson's significant sentencing disparity.

## V.    CONCLUSION

This Court sympathizes with Gipson. Had Congress authorized a reduced sentence based on a non-retroactive change in law, the Court would not hesitate grant compassionate release to Gipson. While USSG § 1B1.13(b)(6), on its face, authorizes a reduced sentence for unusually long sentences like Gipson's, the Commission exceeded its authority by promulgating it. And there are

---

[47] In 2010, Congress passed the Fair Sentencing Act of 2010, which increased the quantity threshold of crack cocaine to trigger certain mandatory sentencing minimums. § 2(a), 124 Stat. 2372. This change to the mandatory minimums for crack cocaine only became retroactive in 2018 when Congress expressly did so in the First Step Act. Pub. L. 115–391, 132 Stat. 5194; *see also Terry v. United States*, 593 U.S. 486, 491–92 (2021) (Thomas, J.) (explaining that the First Step Act made sentence reductions retroactive for certain "covered offenses" described in the Fair Sentencing Act").

no other avenues Gipson identifies for a reduction elsewhere in USSG § 1B1.13. No measure of sympathy nor desire for justice to be done could legitimize this Court ignoring the legislative prerogative to allow the Commission to exceed its lawful authority. Therefore, for the reasons explained above, the Court **DENIES** Defendant's Motion for Compassionate Release (ECF No. 27).

    **SO ORDERED** this **8th day** of **March, 2024**.

*[Signature]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**